IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| Deobrah A. Cohen, | ) | Civil Action No. 2:16-cv-01238-RMG-MGB |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Nancy Berryhill, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

This case is before the court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).

Matthew A. Cohen brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

On May 30, 2017, counsel for Mr. Cohen filed a Consent Motion to Substitute Party, indicating that Mr. Cohen passed away on November 7, 2016, while the instant action was pending. (Dkt. No. 20.) On June 1, 2017, Mr. Cohen's daughter, Deborah A. Cohen, was substituted as the Plaintiff in this matter. (Dkt. No. 22; *see also* Dkt. No. 20.) Although Mr. Cohen's death extinguished his claim for SSI benefits,[1] Ms. Cohen proceeds on the claim for DIB benefits for the period between August 1, 2010 and October 1, 2013.

---

[1] *See* Dkt. No. 20-1; *see also* 42 U.S.C. § 1383(b)(1)(A); 20 C.F.R. § 416.542(b)(1)(4); *Shelton v. Astrue*, Civ. A. No. 3:10-cv-01397, 2012 WL 242787, at *1 (S.D.W. Va. Jan. 25, 2012) ("Inasmuch as Claimant was an adult and had no surviving spouse, his claim for SSI benefits extinguished upon his death.").

1

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 51 years old on his amended alleged disability onset date of August 1, 2010. (R. at 15, 21, 630.)[2] He alleged disability due to coronary artery disease, diabetes, and kidney disease. (R. at 17, 632.) Plaintiff has at least a high school education and past relevant work as a custodian and machine operator. (R. at 21, 637.)

Plaintiff protectively filed an application for DIB and SSI on September 4, 2010. (R. at 15.) His applications were denied initially and on reconsideration. (R. at 15.) After a hearing before an Administrative Law Judge (ALJ) on November 1, 2012, the ALJ issued a decision on December 3, 2012, in which the ALJ found that Plaintiff was not disabled. (R. at 15-23.) On July 17, 2015, the Honorable Richard M. Gergel issued an order reversing the ALJ's decision and remanding the case to the Commissioner. (*See* R. at 677-91.)[3]

On August 31, 2015, the Appeals Council vacated the Commissioner's decision and remanded the case to an ALJ "for further proceedings." (R. at 695.) After another hearing before an ALJ on February 5, 2016, the ALJ issued a decision on March 4, 2016, in which the ALJ found that Plaintiff was disabled beginning October 1, 2013. (*See* R. at 630-38.) However, in this same decision, the ALJ found that Plaintiff was not disabled prior to October 1, 2013. (R. at 630-38.) The ALJ's decision dated March 4, 2016 is the final decision of the Commissioner for purposes of judicial review and is the subject of this civil action filed by the Plaintiff.

In making the determination that the Plaintiff is not entitled to benefits for the period from August 1, 2010 until October 1, 2013, the Commissioner has adopted the following findings of the ALJ:

> (1)　The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

---

[2]Plaintiff originally alleged his disability onset date was December 30, 2008; at the first hearing, he amended his alleged onset date to August 1, 2010. (R. at 15.)

[3]*See Cohen v. Comm'r*, Civ. A. No. 2:14-cv-01775-RMG (D.S.C. July 17, 2015).

(2) The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) Since the amended alleged onset date of disability, August 1, 2010, the claimant has had the following severe impairments: coronary artery disease, status-post bypass surgery, diabetes mellitus, and kidney disease (20 CFR 404.1520(c) and 416.920(c)).

(4) Since the amended alleged onset date of disability, August 1, 2010, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that since August 1, 2010 and prior to October 1, 2013, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant could have no exposure to temperature extremes, high humidity, pulmonary irritants, or work hazards. He was limited to simple, repetitive, routine tasks not requiring good far visual acuity and must be allowed to change position from sitting to standing in place at least every 20 minutes.

(6) Since August 1, 2010, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On October 1, 2013, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Prior to October 1, 2013, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on October 1, 2013, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Prior to October 1, 2013, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

(11) Beginning on October 1, 2013, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(12) The claimant was not disabled prior to October 1, 2013, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 630-38.)

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

Plaintiff claims the ALJ erred in failing to find Mr. Cohen disabled during the period from August 1, 2010 until October 1, 2013. Plaintiff contends the ALJ "failed to follow this court's remand order in according the opinion of Dr. Hamilton, Mr. Cohen's treating nephrologist, 'little weight,' as the ALJ's stated reasons for doing so are, once again, deficient." (Dkt. No. 11 at 18.) Plaintiff asserts that, properly crediting Dr. Hamilton's opinion that Mr. Cohen is limited to sedentary work, "Grid Rule 201.14 directs a finding of disability." (Dkt. No. 11 at 27.) Plaintiff further asserts the ALJ "failed to follow this court's remand order in, once again, reversibly erring by improperly evaluating Mr. Cohen's credibility." (Dkt. No. 11 at 29.)

As the ALJ did in his 2012 opinion, in his 2016 opinion, the ALJ afforded the opinion of Dr. Hamilton, Mr. Cohen's treating nephrologist, "little weight." (R. at 635; *see also* R. at 20.) In the at-issue opinion, dated October 25, 2012, Dr. Hamilton stated,

> I have been providing care to Mr. Matthew Cohn [sic] since October of 2010. He has several medical diagnosis [sic] including coronary artery disease, chronic kidney disease[,] hypertension and a history of CABG. The patient's kidney disease is stable but progressive and results in fluid retention and anemia that causes fatigue, decreased energy and concentration difficulties. We do not expect any improvement in his rental function and actually there is a strong chan[c]e it will worsen over time to the point he may need dialysis in the future. His *sustainable* activity since I have been following him is at a sedentary level, and this is a direct result of the symptoms and complications of his medical conditions.

(R. at 616 (emphasis added).) Attached to that letter was the definition of exertional categories for residual functional capacity. (*See* R. at 617.)[4]

---

[4]"Sedentary" was defined as follows:
> Sitting for 6 hours out of 8-hour day; stand and/or walk 2 hours out of 8-hour day; occasionally lift/carry up to 10 pounds; frequently lift/carry small articles less than 10 pounds[.]

(R. at 617.) "Light" was defined as follows:
> Standing/walking for 6 hours out of 8-hour day; sit off and on for 2 hours out of 8-hour day; occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10 pounds.

(*Id.*)

6

In assigning "little weight" to Dr. Hamilton's opinion, the ALJ stated,

> Dr. N. Brent Hamilton issued a medical source statement dated October 2012 regarding the claimant's kidney condition. (Exhibit 21F). Dr. Hamilton reported treating the claimant since October 2010, and stated that the claimant's kidney disease is stable but progressive and results in fluid retention and anemia. He further stated that the claimant's kidney function is not expected to improve and that the claimant may require dialysis in the future. The undersigned has given little weight to Dr. Hamilton's conclusion that the claimant could perform work at no more than sedentary work since the start of his treatment, due to fatigue, decreased energy and concentration difficulties. This opinion lacks credibility, as Dr. Hamilton focuses on non-exertional limitations and, as such, his justification for limiting the claimant to sedentary work is unclear. Fatigue primarily relates to the ability to sustain work activity and does not place a bar on the extent of exertional activity. It appears that Dr. Hamilton prepared this report as an accommodation to the claimant and based on his subjective complaints. The undersigned notes, as well, the claimant positions offered by the vocational expert, below, essentially allow the worker to sit or stand to perform his duties; rendering fatigue less of a factor in the ability to complete a work-day. The undersigned notes, as well, that Dr. Hamilton's treatment notes prior to this medical source statement indicate that the claimant is in stable condition and that his symptoms require maintenance rather than intervention. (Exhibit 19F).

(R. at 635-36.)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. *See* 20 C.F.R. § 404.1527.[5] The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating

---

[5]The undersigned notes that the "Treating Physician "Rule," which applies in the instant action, applies only to claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1520c; *see also Marshall v. Berryhill*, Civ. A. No. 16-cv-00666-BAS-PCL, 2017 WL 2060658, at *3 n.4 (S.D. Cal. May 12, 2017).

7

physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. 20 C.F.R. § 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5; *see also* 20 CFR § 404.1527(c)(2).[6]

The reasons that the ALJ rejected Dr. Hamilton's opinion in 2012--reasons that have already been rejected by this court--are essentially the same reasons the ALJ provides in his 2016 opinion. (*Compare* R. at 635-36 *with* R. at 20.) In concluding Mr. Cohen had the residual functional capacity to perform a limited range of light work, the ALJ stated, in his 2012 opinion,

> The undersigned has considered, but given little weight to, Dr. Brent Hamilton's October 2012 medical source statement regarding his treatment of the claimant. (Exhibit 21F). Dr. Hamilton indicates that the claimant's diagnoses cause fatigue, decreased energy, and concentration difficulties. The undersigned notes that these symptoms cause non-exertional rather than exertional limitations and, as such, Dr. Hamilton's opinion that the claimant is limited to sedentary work is unjustified. The undersigned notes that this opinion is unsupported by Dr. Hamilton's own treatment notes for the claimant, which do not evidence functional limitations and show that the claimant's condition is, in fact, stable. It appears that Dr. Hamilton prepared this report as an accommodation to the claimant based on his subjective complaints.

(R. at 20; *see also* R. at 18.)

In *Cohen v. Commissioner*, Civ. A. No. 2:14-cv-01775-RMG (D.S.C. July 17, 2015), the court stated, "The fact that the symptoms identified by Dr. Hamilton–fatigue, decreased energy, and concentration difficulties–are non-exertional is not a 'good reason' to reject his opinions." (*See* Dkt. No. 26 at 8 of 12 in Civ. A. No. 2:14-cv-01775-RMG; *see also* Dkt. No. 29 in Civ. A. No. 2:14-cv-01775-RMG.) This error was discussed in detail; the undersigned stated, in a Report and Recommendation adopted by the Honorable Richard M. Gergel,

---

[6]Although SSR 96-2p has been rescinded for claims filed on or after March 27, 2017, SSR 96-2p applies to the court's analysis in this action. *See, e.g., Reyes v. Berryhill*, Civ. A. No. 16-10466-DJC, 2017 WL 3186637, at *7 n.5 (D. Mass. July 26, 2017).

8

Residual Functional Capacity is "the most [a claimant] can still do despite [his or her] limitations. 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1). Social Security Ruling 96-8p provides further guidance in assessing Residual Functional Capacity; that ruling states,

> Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.

SSR 96-8p, 1996 WL 374184, at *2 (emphases in original)). The ALJ concluded that Plaintiff's kidney disease was a severe impairment. (See R. at 17.) The fact that Dr. Hamilton–a nephrologist–identified non-exertional limitations in his letter is hardly surprising, and, in any event, "[n]onexertional impairments may or may not affect a person's capacity to carry out the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do." SSR 85-15, 1985 WL 56857, at *2; cf. SSR 96-8p, at *3 ("[I]n order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level."); SSR 96-8p, at *6 ("[E]ven though mental impairments usually affect nonexertional functions, they may also limit exertional capacity by affecting one or more of the seven strength demands. For example, a mental impairment may cause fatigue . . . ."). Accordingly, the ALJ erred in discounting Dr. Hamilton's opinion because the symptoms Dr. Hamilton identified were nonexertional.

(Dkt. No. 26 at 8-9 in Civ. A. No. 2:14-cv-01775-RMG; *see also* Dkt. No. 29 in Civ. A. No. 2:14-cv-01775-RMG.) In a footnote in the 2014 case, the undersigned stated,

> As noted in Lewis v. Colvin, Civ. A. No. 1:13-cv-3445 DCN, 2014 WL 6908900 (D.S.C. Dec. 8, 2014),
>> Symptoms of chronic kidney disease are generally mild in the early stages and may include appetite loss, general ill feeling and **fatigue**, headaches, itching and dry skin, nausea, and unintended weight loss. Symptoms that appear in conjunction with significantly reduced kidney function include abnormally dark or light skin, bone pain, drowsiness or **problems concentrating** or thinking, numbness or swelling in the hands and feet, muscle twitching or cramps, breath odor, easy bruising or blood in the stool, excessive thirst, frequent hiccups, problems with sexual function, **shortness of breath**, sleep disturbance, and vomiting. . . . **Anemia** is one of many possible complications of chronic kidney disease.
> Lewis, 2014 WL 6908900, at *12 (citations omitted) (emphasis added).

9

(Dkt. No. 26 at 8 n.6 in Civ. A. No. 2:14-cv-01775-RMG; *see also* Dkt. No. 29 in Civ. A. No. 2:14-cv-01775-RMG.)

Despite the court's previous instruction that "[t]he fact that the symptoms identified by Dr. Hamilton–fatigue, decreased energy, and concentration difficulties–are non-exertional is not a 'good reason' to reject his opinions," the Commissioner once more--in the 2016 opinion--used the same deficient reasoning to reject the opinion of Mr. Cohen's treating nephrologist. (R. at 635-36; *see also* Dkt. No. 26 at 8 of 12 in Civ. A. No. 2:14-cv-01775-RMG; Dkt. No. 29 in Civ. A. No. 2:14-cv-01775-RMG.) The ALJ stated, *inter alia*, "Fatigue primarily relates to the ability to **sustain** work activity and does not place a bar on the extent of exertional activity." (R. at 636 (emphasis added).) Respectfully, however, light work (and the RFC found herein) requires the ability to stand or walk for up to six hours in an eight-hour day. *See* SSR 83-10, 1983 WL 31251, at *6 (noting that the "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"); *see also* R. at 633.) It is difficult to imagine that fatigue would play no part in an individual's ability to sustain light work, or to stand and walk for six hours out of an eight-hour day.[7] *See* SSR-83-10, at *5 (noting that an "exertional activity" is "[o]ne of the primary strength activities (sitting, standing, walking, lifting, carrying, pushing, and pulling) defining a level of work"); *Kaschyk v. Astrue*, Civ. A. No. 8:08-CV-1818-T-TGW, 2009 WL 2876755, at *3 (M.D. Fla. Sept. 8, 2009) (noting that the ALJ's "decision leaves unexplained how a person with a severe impairment of fatigue could perform a job that requires six hours of standing and walking"); *cf. Quinones v. Sec'y of Dep't of Health & Human Servs.*, 567 F. Supp. 188, 191 (E.D.N.Y. 1983) (noting that although fatigue is a non-exertional impairment, it "affects [the] plaintiff's ability to perform any activity, strength-related or not").

---

[7]Moreover, to the extent the ALJ asserts that the positions offered by the vocational expert "essentially allow the worker to sit or stand to perform his duties[,] rendering fatigue less of a factor in the ability to complete a work-day," (*see* R. at 636), it appears to the undersigned that the ALJ is--albeit implicitly--limiting Mr. Cohen to sedentary work. *See* SSR 83-10, 1983 WL 31251, at *5 ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").

In his 2012 opinion, the ALJ additionally concluded that Dr. Hamilton's opinion was entitled to "little weight" because it was "unsupported by [his] own treatment notes for the [Mr. Cohen], which do not evidence functional limitations and show that . . . [Mr. Cohen's] condition is, in fact, stable." (R. at 20.) Similarly, in his 2016 opinion, the ALJ concluded that Dr. Hamilton's opinion was entitled to "little weight" because "Dr. Hamilton's treatment notes prior to this medical source statement indicate that the claimant is in stable condition and that his symptoms require maintenance rather than intervention." (R. at 636.) In *Cohen v. Commissioner*, Civ. A. No. 2:14-cv-01775-RMG, the court rejected the ALJ's conclusion that Dr. Hamilton's opinion was entitled to "little weight" because Plaintiff's condition was stable. (*See* Dkt. No. 26 at 9-10 in Civ. A. No. 2:14-cv-01775-RMG; *see also* Dkt. No. 29 in Civ. A. No. 2:14-cv-01775-RMG.) In the 2014 case, the court stated,

> In concluding Dr. Hamilton's opinion was entitled to "little weight," the ALJ also noted that Hamilton's opinion was "unsupported by [his] own treatment notes for the [Plaintiff], which do not evidence functional limitations and show that the [Plaintiff's] condition is, in fact, stable." (R. at 20.) As noted above, in concluding Plaintiff's "sustainable activity" since October of 2010 was "at a sedentary level," Dr. Hamilton noted Plaintiff's "stable but progressive" kidney disease that "results in fluid retention and anemia that causes fatigue, decreased energy and concentration difficulties." (R. at 616.) While the medical records in this case do indicate some stability to Plaintiff's kidney disease, they also–as Dr. Hamilton indicated–point to its progressiveness. (See, e.g., R. at 535, 538.) Plaintiff's laboratory reports reveal that, although there is some minor fluctuation in the numbers, Plaintiff's Glomerular Filter Rate ("GFR") is on a downward trend. For example, Plaintiff's GFR was 43 on August 15, 2010; 45 on December 2, 2010; 41 on December 7, 2011; 35 on January 24, 2012; and 34 on August 28, 2012. (See R. at 528, 491, 604, 582, 599.) In addition, Plaintiff's level of creatinine is consistently high. (See, e.g., R. at 491, 520-21, 601, 599.) In any event, the fact that Plaintiff's condition may be stable does not mean that it cannot also be disabling. See Hemminger v. Astrue, 590 F. Supp. 2d 1073, 1081 (W.D. Wis. 2008) ("[T]he fact that other physicians who examined or treated plaintiff . . . used the word 'stable' to describe her fibroymyalgia says nothing about whether plaintiff can work: a person can have a condition that is both 'stable' and disabling at the same time." (citing Bauer v. Astrue, 532 F.3d 606, 609 (7th Cir. 2008)); Moreles v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) ("Dr. Erro's observations that Morales is 'stable and well controlled with medication' during treatment does not support the medical conclusion that Morales can return to work. Dr. Erro, despite his notation, opined that Morales's mental impairment rendered him markedly limited in a number of relevant work-related activities.").

11

(*See* Dkt. No. 26 at 9-10 in Civ. A. No. 2:14-cv-01775-RMG; *see also* Dkt. No. 29 in Civ. A. No. 2:14-cv-01775-RMG.) In a footnote in the 2014 case, the court noted that Dr. Hamilton's opinion was consistent with Plaintiff's testimony. (*See* Dkt. No. 26 at 9-10 n.8 in Civ. A. No. 2:14-cv-01775-RMG; *see also* Dkt. No. 29 in Civ. A. No. 2:14-cv-01775-RMG.)

As indicated herein (and in the undersigned's previous Report and Recommendation), the ALJ's decision to give Dr. Hamilton's opinion "little weight" is not supported by substantial evidence. Moreover, as stated by Social Security Ruling 96-2p,

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *4.[8] As noted in the previous order, Dr. Hamilton is a specialist; he treated Mr. Cohen for his kidney disease over the course of several years; and that kidney disease is well documented in the record. In the opinion of the undersigned, the ALJ's evaluation of Dr. Hamilton's opinion, once more, falls short of the analysis required by the Treating Physician Rule. *See, e.g., Wall v. Colvin*, Civ. A. No. 8:12-3152-RMG, 2014 WL 517461, at *6 (D.S.C. Feb. 7, 2014) (the ALJ's "evaluation of the expert opinions . . . falls far short of the clearly established standards of the Treating Physician Rule" where, *inter alia*, "the opinions of Dr. Netherton, Plaintiff's long-serving treating-specialist physician, were largely dismissed without reference to the standards of the Treating Physician Rule," and "[n]o weight was noted to be given for Dr. Netherton's treating relationship or the fact that he is a pain specialist"). Accordingly, the undersigned concludes the Commissioner's decision is not supported by substantial evidence.

Plaintiff argues that once Dr. Hamilton's opinion is properly credited, and Mr. Cohen limited to sedentary work, the Grids direct a finding of disability. (Dkt. No. 11 at 27.) If the District Judge

---

[8]*See supra* n. 6.

adopts the instant Report and Recommendation, that will be twice now that the Commissioner has not set forth "good reasons" to discount the opinions of Mr. Cohen's treating nephrologist, Dr. Hamilton. And, as Plaintiff notes, if Dr. Hamilton's opinion is properly credited, the Grids direct a finding of disability. *See* 20 CFR Part 404, Subpart P, Appendix 2. Remand for reconsideration would serve no useful purpose in the instant action, given this case has already been remanded once, reopening the record for more evidence would serve no useful purpose, and Mr. Cohen is now deceased. Accordingly, the undersigned recommends remanding this case for an award of benefits for the period between August 1, 2010 and October 1, 2013. *See Breeden v. Weinberger*, 493 F.2d 1002, 1011-12 (4th Cir. 1974); *Meyer-Williams v. Colvin*, 87 F. Supp. 3d 769, 773 (M.D.N.C. 2015); *Richardson v. Colvin*, Civ. A. No. 8:12-cv-03507-JDA, 2014 WL 793069 at *20 (D.S.C. Feb. 25, 2014).[9]

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned RECOMMENDS that the decision of the Commissioner be REVERSED and the case be REMANDED to the Commissioner for an award of disability insurance benefits to the Plaintiff based on disability between August 1, 2010 and October 1, 2013.

IT IS SO RECOMMENDED.

July 31, 2017
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[9] Because the undersigned concludes that reversal for an award of benefits is warranted pursuant to the proper application of the Treating Physician Rule, the undersigned does not address the Plaintiff's remaining claims of error.

13